44

*In re* TWENTY-SEVEN THOUSAND FOUR HUNDRED FORTY DOLLARS (The People *ex rel.* Edward F. Petka, State's Attorney of Will County, Plaintiff-Appellant, v. Twenty-Seven Thousand Four Hundred Forty Dollars, Defendant-Appellee).

Third District   No. 3—87—0049

Opinion filed December 23, 1987.

Edward F. Masters, State's Attorney, of Joliet (Walter P. Hehner, of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellant.

Hubert E. Hermanek, Jr., of Chicago, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

The State brought this action in the circuit court of Will County as a complaint for forfeiture of $27,440 in United States currency pursuant to section 505 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1505) (the Act). The currency was claimed by Isabelle Vasquez, a Columbian native. The court, after hearing the matter, denied the complaint and ordered that the money be returned to Mrs. Vasquez. The State brings this appeal, challenging the trial court's ruling. For reasons that follow, we affirm.

According to the record on appeal, Alejandro Vasquez, Isabelle's husband and a Columbian native as well, was stopped by Will County sheriff's deputy Frank Pena for drunk driving in the early morning hours of September 3, 1986. Vasquez' passenger, Alberto Gomingez, or Gomez, reportedly told Pena that they had driven to a park in Springfield and that two paper bags were there exchanged. A search of Vasquez' vehicle revealed a paper bag under the driver's seat and containing 969 bills of United States currency valued at $27,440. Both Vasquez and Gomingez denied knowledge or ownership of the bag of money.

The money was taken into custody by Wilmington Police Chief Franklin Lyons and submitted to the crime laboratory to determine whether any cocaine could be detected on the bills. Devendra Trivedi, a forensic scientist, conducted three tests on the currency and determined that a residue on the bills contained cocaine. The residue had not been visible to the naked eye. During cross-examination, Trivedi admitted that the small amount of cocaine could have been on a single bill.

On November 6, 1986, Isabelle Vasquez, through her attorney, filed a motion to dismiss the complaint. In support of the motion, she filed an affidavit claiming that she had received the money around September 1, 1986, from her uncle, Carlos Rodriguez in New York, to be used for the purchase of an apartment building in Palatine, Illinois. Isabelle further averred that she had placed the money in her automobile on September 2, intending to deposit it the following day. However, her husband, Alejandro, had taken the vehicle without her knowledge that evening; and she was notified around 2:30 a.m. on the 3rd that Alejandro had been arrested for driving under the influence of alcohol. The trial court heard the claimant's motion on December 16 and denied it.

At trial on January 26, 1987, the State introduced the testimony of Police Chief Lyons and Devendra Trivedi. The State then rested, as did the defense, without presenting any evidence. After closing arguments, the court stated that the currency could not be traced to any particular drug transaction, and that without a sufficient nexus between any violation of the Illinois Controlled Substances Act and the 969 bills, the currency was not subject to forfeiture.

In this appeal, the State initially claims that the trial court applied the wrong standard of proof when determining that the State's evidence was insufficient to establish that any drug transaction had taken place for purposes of section 505(a)(5) of the Act. The authority upon which the State relies in this argument appears in the first part of that section, which states that forfeitable matter includes

> "everything of value furnished, or intended to be furnished, in exchange for a substance in violation of this Act, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used, or intended to be used, to facilitate any violation of this Act; except that no property is subject to forfeiture under this Section, to the extent of the interest of an owner, by reason of any act or omission which that owner proves to have been committed or omitted without his or her knowledge or consent." Ill. Rev. Stat. 1985, ch. 56½, par. 1505(a)(5).

■■ ■ It is well settled that statutory forfeiture actions are considered civil in nature and do not depend upon a prior criminal conviction. Guilt or innocence is not at issue, only whether the forfeitable property was used in the commission of an offense. The appropriate standard by which the State must prove its case is a preponderance of the evidence, rather than beyond a reasonable doubt. (*People ex rel. Power v. One 1979 Chevrolet Camaro* (1981), 96 Ill. App. 3d 109, 420

N.E.2d 770.) On issues of fact, a reviewing court will give deference to the trial court's judgment unless that court's ruling is contrary to the manifest weight of the evidence. *People ex rel. Daley v. $9,403 In U.S.C.* (1985), 131 Ill. App. 3d 188, 476 N.E.2d 80.

In rejecting the State's complaint in this case, the trial court stated, "The court is of the opinion that the evidence in this case that would show that these particular funds, $27,440, are traceable to a particular drug transaction or any kind of a transaction *** which might be proven [is] so tenuous and so flimsy as really to be insufficient for the court to base an order on." The State leans on the phrase "which might be proven" in its contention that the trial court applied the criminal "reasonable doubt" standard rather than the proper preponderance of the evidence standard of proof.

In the first instance, we do not find that the trial judge's language is in any way indicative of a misapprehension on the court's part that the applicable standard of proof was other than a preponderance of the evidence. Moreover, it is clear to us that the State's evidence of a drug transaction, or exchange, was insufficient under any legal standard. Police Chief Lyons' hearsay within hearsay testimony that Gomingez (or Gomez) said to Deputy Pena that paper bags had been exchanged in a park in Springfield established neither that any controlled substances were involved nor that the currency at issue was involved in that exchange. Even coupled with the fact that a "residual" amount of cocaine was found on the currency, the evidence cannot be said to prove the fact that the currency at issue was traceable to an "exchange for a substance in violation of [the] Act." Ill. Rev. Stat. 1985, ch. 56½, par. 1505(a)(5).

■ The vehicle's driver, Alejandro Vasquez, was charged with driving under the influence of alcohol, not drugs. He was not charged with possession of any controlled substances. Neither Vasquez nor Gomingez claimed ownership or knowledge of the currency. Despite a thorough search of the vehicle, no evidence of controlled substances was found. No visible traces of cocaine appeared on the currency. According to the State's expert, the cocaine that he identified could have been on a single bill among the 969 tested by him. At best, the State's evidence invited speculation or surmise that someone might have delivered cocaine in a park in Springfield in exchange for the $27,440. But such conjecture is no substitute for proof and is legally insufficient to support the conclusion that the requisite exchange took place. Thus, we hold that the court's determination that the State failed to prove a nexus between the currency and any illegal activity is not contrary to the manifest weight of the evidence.

Next, the State contends that its evidence raised a presumption that the currency was subject to forfeiture and that, the claimant having introduced no evidence whatsoever at trial, forfeiture should have been ordered. Here, the State relies on that part of the statute which states that "[a]ll *** currency found in close proximity to forfeitable substances *** [is] rebuttably presumed to be forfeitable under this Act. The burden of proof is upon claimants of the property to rebut this presumption." (Ill. Rev. Stat. 1985, ch. 56½, par. 1505(a).) The State posits that this language provides an independent basis for forfeiture without establishing any illegal activity related to the currency. We disagree.

As a general rule, forfeitures are disfavored at law and statutes authorizing them "should be strictly construed 'in a manner as favorable to the person whose property is to be seized as is consistent with the fair principles of interpretation.' " (*State v. One (1) 1979 Chevrolet Camaro Z-28* (1985), 202 N.J. Super. 222, 229, 494 A.2d 816, 820, quoting *State v. One (1) Ford Van Econoline* (1977), 154 N.J. Super. 326, 332, 381 A.2d 387, 390, and 37 C.J.S *Forfeitures* §4b (1943).) The purpose of the broad-sweeping forfeiture provision is to control illegal trafficking in controlled substances (see *People ex rel. Power v. One 1979 Chevrolet Camaro*, 96 Ill. App. 3d at 112, 420 N.E.2d at 773), not to divest persons of all currency that happened to come into contact with controlled substances at some earlier point in time. The presumption that arises when currency is found in close proximity to a forfeitable substance is that the currency is derivatively forfeitable— *i.e.*, it was used "in exchange for a substance in violation of [the] Act." See Ill. Rev. Stat. 1985, ch. 56½, par. 1505.

Clearly, the legislature intended the presumption to apply to situations where observable controlled substances or distributing paraphernalia, etc., are found in near proximity to currency. However, a presumption cannot be based upon a presumption or an inference where the undisputed facts may give rise to different reasonable inferences. (*Zide v. Jewel Tea Co.* (1963), 39 Ill. App. 2d 217, 188 N.E.2d 383.) In this case, the State presumes that the $27,440 in United States currency was in close proximity to a forfeitable substance. The only evidence in support of its theory is that a "residual" amount of cocaine— unweighed by the forensic scientist, not visible to the naked eye and which may have been on a single bill—was identified among the 969 bills that the State is proceeding against. Other than that, the State does not establish where or when the bills were in close proximity to cocaine. The State theorizes that the close proximity may have taken place in a park in Springfield on the evening of September 2, 1986.

Presumably, this theory is supported by Police Chief Lyons' testimony that Gomingez told Pena that two paper bags were exchanged earlier on the night in question. Even assuming the relevance of such evidence, it wholly failed to suggest what, if anything, the alleged bags contained. Again, we would have to presume that a paper bag of cocaine was exchanged for a paper bag of currency.

■ It is readily apparent from the foregoing excursion into presumptions within presumptions that the presumption in section 505(a)(5) would rest upon shaky constitutional ground, at best, were we to hold that the State's evidence here was sufficient to justify a forfeiture. On the basis of the evidence presented in this case, the trial court correctly ruled that the presumption contained in section 505(a)(5) did not arise.

For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

Affirmed.

WOMBACHER and SCOTT, JJ., concur.