BUREAU OF CREDIT CONTROL, Plaintiff and Counterdefendant-Appellee, *v.* PEGGY SCOTT, Defendant and Counterplaintiff-Appellant.

Fourth District    No. 13096

Opinion filed March 25, 1976.

CRAVEN, J., concurring in part and dissenting in part.

Eugene M. Thirolf, of Land of Lincoln Legal Assistance Foundation, of Champaign, and Michael L. Sirota, Law Student, for appellant.

Baer & Mann, of Champaign, for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Carle Foundation Hospital had a claim in the sum of $218.54 against the defendant-counterplaintiff-appellant (hereinafter Scott), Peggy Scott. The claim was purchased by plaintiff-counterdefendant-appellee (hereinafter Bureau), Bureau of Credit Control.

On August 31, 1973, Bureau filed a small claims complaint for the amount of the claim plus interest and costs. On September 28, 1973, Scott filed her answer, admitting that her minor child had received medical treatment by the hospital. She also filed an affirmative defense alleging that the hospital had been constructed, in part, with Federal funds, and that the hospital was therefore required to furnish needed medical services to persons unable to pay therefor, and cited sections of Federal statutes which purportedly supported the affirmative defense. On October 31, 1973, Bureau's motion to strike the defense was denied.

On December 5, 1973, Scott filed a four-count counterclaim. The factual allegations in the counterclaim may be summarized as follows. In late July or early August 1973, the Bureau collection agency telephoned Scott in an attempt to collect the claim in question. During this conversation, Scott informed Bureau that she was receiving public assistance in the form of *Aid to Dependent Children*, that she barely had enough money to live on, and could not pay the debt. During the first three weeks of August 1973, Bureau continued its attempt to collect the debt by a series of at least 15 telephone calls made by a Mrs. Hall, an agent of Bureau. During these calls, Bureau's agent shouted at Scott, called her a "deadbeat," criticized her moral character, threatened court action, threatened to continue the calls until the debt was paid. Scott repeatedly told Hall that the calls were causing her emotional anguish and making her very nervous, but the calls continued. Despite Scott's plea to the contrary, calls were made to each of her parents about the debt, and in addition, calls were made to Scott at her place of employment though Scott had demanded that this cease since it jeopardized her job. As a direct result of these collection tactics, Scott suffered severe emotional distress, was forced to seek medical attention to relieve severe and constant headaches, loss of appetite and sleep.

Count I of the complaint alleged intentional infliction of severe emotional distress. Counts II, III and IV alleged invasion of privacy by unreasonable intrusion upon her seclusion and solitude, by publicity which unreasonably placed her in a false light, and by public disclosure of true, but private, facts about her. On motion of Bureau, the trial court dismissed all four counts of the counterclaim and found no just reason to delay enforcement or appeal of the order.

The question before us is a question of law. Is the complaint legally sufficient? (*Cain v. American National Bank & Trust Co.*, 26 Ill. App. 3d 574, 578, 325 N.E.2d 799.) In reviewing the order, the complaint is to be construed against the pleader, who is, however, entitled to all the reasonable intendments and inferences which can be drawn from the language employed in the pleading. (*James v. Bank of Highland Park*, 82 Ill. App. 2d 118, 226 N.E.2d 404.) Pleadings are to be liberally construed with a view to doing substantial justice between the parties (Ill. Rev. Stat. 1973, ch. 110, par. 33(3)), and if, on the facts alleged and the reasonable inferences drawn therefrom, there is demonstrated any possibility of recovery, the order of dismissal must be vacated. *Johnson v. North American Life & Casualty Co.*, 100 Ill. App. 2d 212, 217, 241 N.E.2d 332; *Palier v. Dreis & Krump Manufacturing Co.*, 81 Ill. App. 2d 1, 5, 225 N.E.2d 67.

Count I of the counterclaim stated a cause of action and the dismissal of that count was error. In *Knierim v. Izzo*, 22 Ill.2d 73, 174 N.E.2d 157, the court recognized that intentional infliction of severe emotional distress

constituted tortious conduct for which damages can be recovered.

Paragraph 13 of Count I alleges that Bureau intentionally called Scott at her place of employment, despite her warnings that repeated calls might result in loss of her job and that this was done " * * * with the express purpose of causing her embarrassment and discomfort so as to force her to pay the alleged claim." Succeeding paragraphs allege calls to Scott's parents made with the express purpose of causing her mental anguish and embarrassment, and that the repeated and numerous calls were made for the express purposes above described. Paragraph 16 of the counterclaim alleges that as a direct result of Bureau's "collection campaign" Scott suffered "* * * severe emotional distress in that she became highly nervous and was forced to seek medical attention to relieve constant and severe headaches, loss of appetite and loss of sleep."

Bureau argues that the language of the court (*Knierim*, 22 Ill. 2d 73, 85) which states that not every emotional upset should provide a basis for recovery, and that neurotic overreactions to "trivial hurts" should not be encouraged, precludes recovery here, since only a "slight hurt" is, in effect, pleaded. In our view, the allegations of paragraph 16 of Count I quoted above do not allege a "slight hurt." These are allegations of substantial emotional harm, and resultant physical distress. Bureau also argues that the opinion in *Knierim* means "* * * that just because someone may become upset as a result of a conversation and their reaction is not one that would occur in a person of ordinary sensibilities then the action must fail." We note that the complaint here does not involve "a conversation," but rather some 15 conversations. In our view, this contention involves a question of fact, to be determined by the jury.

> "The 'reasonable man' seems to be well known to jurors and we expect that they will also be acquainted with the 'man of ordinary sensibilities.' Whether the aggressive invasion of mental equanimity is unwarranted or unprovoked, whether it is calculated to cause severe emotional disturbance in the person of ordinary sensibilities * * * are all questions that will depend on the particular facts of each case." (*Knierim*, 22 Ill.2d 73, 86.)

We cannot hold, as a matter of law, that the allegations contained in Count I of the counterclaim allege trivial hurts to which Scott has neurotically overreacted, or that what has been pleaded is a slight hurt which one must endure in a complex society. We hold that Count I states a cause of action, and that the trial court erred in dismissing that count.

Count II of the counterclaim charges invasion of privacy by means of an unreasonable intrusion upon Scott's right to seclusion.

Count III alleges violation of Scott's right to privacy by publicity unreasonably placing her in a false light.

Count IV alleges violation of Scott's right to privacy by public disclosure of true but private facts about her.

It would unduly prolong this opinion to discuss all of the Illinois cases in

which plaintiffs have sought to establish remedies similar to, or identical with, those sought in Counts II, III and IV. It appears that a cause of action for invasion of privacy may be stated for unauthorized use of an individual's name or likeness for commercial purposes. (*Eick v. Perk Dog Food Co.*, 347 Ill. App. 293, 106 N.E.2d 742; *Annerino v. Dell Publishing Co.*, 17 Ill. App. 2d 205, 149 N.E.2d 761.) The scope of the holding in *Annerino* is somewhat difficult to determine since it is unclear whether the use of plaintiff's photograph was published for commercial purposes. We are aware of no other Illinois cases upholding a complaint alleging invasion of privacy. In this case, we see no need to create additional remedies. Scott has a remedy under Count I of the counterclaim.

We hold that Counts II, III and IV of the counterclaim were properly dismissed for failure to state a cause of action and affirm that portion of the order.

We reverse the order of the trial court which dismissed Count I of the counterclaim. The cause is remanded for further proceedings consistent with the views herein expressed.

Affirmed in part, reversed in part and remanded.

TRAPP, P. J., concurs.

Mr. JUSTICE CRAVEN, concurring in part and dissenting in part:

I agree that this case must be reversed and remanded for a trial on the merits and with the holding of the majority that Count I states a cause of action.

In Count II, the defendant-counterplaintiff seeks redress for an unreasonable intrusion upon her privacy or right to seclusion, and Count III alleges a violation of a right of privacy when the plaintiff-counterdefendant publicly and unreasonably placed her in a false light. In my judgment, both of these counts are sufficient to state a cause of action.

In *Midwest Glass Company v. Stanford Development Co.*, 34 Ill. App. 3d 130, 339 N.E.2d 274, the appellate court for the First District, speaking through Mr. Justice Burman, acknowledges that there is a cause of action in Illinois for invasion of privacy. The court there stated:

> "With reference to counterclaimants' first count, the right to privacy as well as the right to a remedy for invasion of such right have received both legislative (Ill. Const., art I, §§6, 12) and judicial sanction (*Leopold v. Levin*, 45 Ill.2d 434, 440, 259 N.E.2d 250, 254) in Illinois. In analyzing the common law right to privacy, Professor

William L. Prosser has delineated four distinct kinds of torts which constitute an invasion of privacy. This breakdown, which has been adopted by the Restatement (Second) of Torts 652A (Tent. Draft No. 13, 1967) as well as many other foreign jurisdictions (*e.g.*, *Marks v. Bell Telephone Co.* (1975), __ Pa. __ , 331 A.2d 424, 430; *Dotson v. McLaughlin* (1975), 216 Kan. 201, 207-08, 531 P.2d 1, 6) comprise the following situations: (1) an unreasonable intrusion upon the seclusion of another, (2) the appropriation of another's name or likeness, (3) a public disclosure of private facts or (4) publicity which unreasonably places another in a false light before the public. Prosser, Law of Torts §117 (4th ed. 1971)." 34 Ill. App. 3d 130, 133, 339 N.E.2d 274, 276.

A complaint that alleges an intentional giving of unreasonable publicity to private debts without consent of the debtor for the purpose of coercing payment states a cause of action. See Annot., 33 A.L.R.3d 154 (1970); *Midwest Glass Company.*

Applying those statements to the facts alleged here, a cause of action is stated in Counts II and III. It is alleged that on at least seven different occasions, plaintiff's agent made loud and threatening telephone calls to the defendant at her home and on at least ten occasions made like telephone calls to her place of employment despite the defendant's pleas to the contrary; calls were made to her parents and sister. These calls were made in the face of an express disclaimer by the defendant that she was in any way liable for the indebtedness.

When a debtor establishes a debtor-creditor relationship, there is an implied consent that the creditor may undertake reasonable efforts at collection. The efforts at collection may, however, become so unreasonable or so outrageous as to transcend the implied consent. This statement is illustrated in the note to comment D in section 652B, Restatement (Second) of Torts (Tent. Draft No. 13, 1967), as follows:

"Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion, or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of [harassing] plaintiff, which becomes a substantial burden to his existence, that his privacy is invaded."

The majority opinion seems to hold that as a matter of law that there is no such cause of action and sees "no need to create additional remedies." As a matter of pleading, a cause of action is stated.