BARBARA KELLY, Indiv. and as Parent and Guardian of Ann Kelly, a Minor, *et al.*, Plaintiffs-Appellants, *v.* GLORIA FRANCO *et al.*, Defendants-Appellees.

First District (1st Division)    No. 77-1306

Opinion filed May 21, 1979.

William A. Kelly, of Chicago, for appellants.

Asher, Goodstein, Pavalon, Gittler, Greenfield & Segall, Ltd., of Chicago (Geoffrey L. Gifford, of counsel), for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This is an appeal from an order of the trial court dismissing both counts of plaintiffs' third amended complaint for failure to state a cause of action. Count I of that complaint was premised on the theory of invasion of privacy and count II on the theory of intentional infliction of severe emotional distress. On appeal plaintiffs argue that the trial court erred in

dismissing counts I and II because each count of the third amended complaint alleged facts which stated a cause of action.

We affirm.

Count I of the third amended complaint alleged that plaintiff Barbara Kelly and her minor children lived at 381 Newport Road in the Village of Hoffman Estates and that the defendants lived at 380 Newport Road in the same village. Count I further alleged that the plaintiff Luke Kelly maintained his legal residence in Chicago, but generally resided with his wife in Hoffman Estates. Count I went on to allege that on November 8 and November 9, 1974, defendants telephoned plaintiffs' residence and that when the telephone was answered defendants immediately hung up. Plaintiffs further alleged on information and belief that defendants had committed the same act on numerous occasions both before and after November of 1974. In their brief plaintiffs indicate that they base their action for invasion of privacy on these phone calls. In count II of their third amended complaint plaintiffs realleged the above allegations and went on to allege that defendants verbally harassed and abused plaintiffs, threatened the plaintiffs that they were going to make them move from their home, and complained to the police regarding plaintiffs' son, Luke Kelly, Jr., on trivial matters. Count II went on to allege that defendants knew Luke Kelly was a fireman and that the threat to make the Kelly family move carried with it the sanction of the loss of Luke Kelly's job; that defendants knew Luke Kelly was called by his employer and threatened with the loss of his job; and that defendants knew their children were telling plaintiffs' children that they would be forced to move from their home. Count II concluded alleging that the above acts were done intentionally and with malice and were of a nature to cause plaintiffs extreme emotional distress and that the above acts did in fact cause severe emotional distress to plaintiffs, especially to Ann Kelly who underwent medical treatment as a result of the above alleged acts.

■■ In support of their contention that count I of the third amended complaint states a cause of action for invasion of privacy, plaintiffs first rely on section 6 of article I of the Illinois Constitution which provides in part:

"The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means." (Ill. Const. 1970, art. I, §6.)

We do not believe that the above provision creates a cause of action for invasion of privacy of the type alleged in count I. This is clear from the record of proceedings of the Sixth Illinois Constitutional Convention. As defendants indicate in their brief the following colloquy occurred at

the convention between Mr. Tomei, and Mr. Dvorak, the sponsor of section 6:

"MR. TOMEI: Delegate Dvorak * * * Your provision with respect to invasions of right of privacy pertains only to invasions by government of public officials. Is that correct?

MR. DVORAK: Yes, that's true." 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1532.

In addition, there was a proposed amendment which sought to add "by the state or any person" after the word "privacy" in section 6. As indicated by the sponsor of the amendment, its purpose was "to deal with the relationship between individuals and individuals." This amendment was rejected by a vote of 49 to 41. 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1539-1543.

Our conclusion that section 6 of article I of the Illinois Constitution creates no cause of action for an invasion of privacy of the type alleged in count I off the complaint is consistent with the Bill of Rights Committee's Report. That committee, whose proposed language covering freedom from invasions of privacy was adopted by the Convention, stated the following in its report:

" '* * * [T]he Committee concluded that it was essential to the dignity and well being of the individual that every person be guaranteed a zone of privacy in which his thoughts and highly personal behavior were not subject to disclosure or review. The new provision creates a direct right to freedom from such invasions of privacy by government or public officials.' " Ill. Ann. Const., art. I, §6, Constitutional Commentary, at 317-18 (Smith-Hurd 1971).

In further support for their argument that count I states a cause of action, plaintiffs cite section 12 of article I of the 1970 Constitution which provides in part: "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. * * *" (Ill. Const. 1970, art. I, §12.) We believe, however, that plaintiffs' reliance on article I is misplaced. As we stated in *Angelini v. Snow* (1978), 58 Ill. App. 3d 116, 119, 374 N.E.2d 215, 218:

"Section 12 incorporates the guarantees formerly contained in article II, section 19 of the Illinois Constitution of 1870. Besides rearranging the wording and placement of this provision, the only change was to substitute the word 'shall' for 'ought to' to make the statement of the principle more emphatic. (See Ill. Ann. Stat., 1970 Const., art. I, §12, Constitutional Commentary, at 556 (Smith-Hurd 1971).) This change has had, and was meant to have, no substantive effect on Illinois law. (See *People v. Dowery* (1975), 62 Ill. 2d 200, 340 N.E.2d 529; *Sullivan v. Midlothian Park District* (1972), 51 Ill.

2d 274, 281 N.E.2d 659; Gertz, *Hortatory Language in the Preamble and Bill of Rights of the 1970 Constitution*, 6 J. Mar. J. of Prac. & Proc. 217, 223-27 (1973).) It created no new constitutional right."

■■ We next turn to Illinois case law in determining whether count I states a cause of action. While Illinois case law clearly recognizes an action for invasion of privacy (see *Leopold v. Levin* (1970), 45 Ill. 2d 434, 259 N.E.2d 250, and cases cited therein), courts should proceed with caution in defining the limits of the right to privacy. (*Bradley v. Cowles Magazines, Inc.* (1960), 26 Ill. App. 2d 331, 168 N.E.2d 64.) William L. Prosser has described the following four distinct types of actions which constitute an invasion of privacy:

(1) an unreasonable intrusion upon the seclusion of another, (2) the appropriation of another's name or likeness, (3) a public disclosure of private facts or (4) publicity which unreasonably places another in a false light before the public. (Prosser, Torts §117, at 804-814 (4th ed. 1971).)

The facts alleged in count I of plaintiffs' complaint fall into Prosser's first category, *i.e.*, an unreasonable intrusion upon the seclusion of another. As to this first category of invasion of privacy, Illinois courts are by no means consistent in their pronouncements. In *Bank of Indiana v. Tremunde* (1977), 50 Ill. App. 3d 480, 365 N.E.2d 295, the court by way of dicta stated that it assumed "our supreme court would recognize [an action for unreasonable intrusion on the seclusion of another] were appropriate facts alleged and proved." (50 Ill. App. 3d 480, 483, 365 N.E.2d 295, 298.) The court in *Tremunde*, however, found no Illinois case which specifically upheld such an action. In fact, in the earlier case, *Bureau of Credit Control v. Scott* (1976), 36 Ill. App. 3d 1006, 345 N.E.2d 37, the court considered whether count II of a counterclaim which alleged invasion of privacy by means of an unreasonable intrusion on one's right to seclusion stated a cause of action. After noting that Illinois cases have recognized that a cause of action for invasion of privacy may be stated for unauthorized use of an individual's name or likeness for commercial purposes, the court in *Scott* went on to hold that count II of the counterclaim failed to state a cause of action. The clear implication in *Scott* is that in Illinois actions for invasions of privacy are limited to use of an individual's name or likeness for commercial purposes. (See Hanson, *Illinois & the Right of Privacy: History and Current Status*, 11 J. Mar. J. Prac. & Proc. 91, 100 (1977).) On the basis of *Scott* we affirm that part of the trial court's order dismissing count I of the third amended complaint.

■■ Moreover, we believe that even if we were to recognize a cause of action for unreasonable intrusion into the seclusion of another, we would

still conclude that the facts upon which plaintiffs rely are insufficient to support that action. In their brief, plaintiffs indicate that they rely on the following facts alleged in count I: that during October and November of 1974 and on many subsequent and prior occasions, including one occasion at 4:30 a.m., defendants called plaintiffs' residence and hung up when the phone was answered. After reviewing cases from other jurisdictions, we conclude that these allegations are insufficient to support a cause of action for unreasonable intrusion on another's seclusion.

Our review of cases from other jurisdictions reveals no case upholding a cause of action for invasion of privacy based upon one's unsolicited telephoning of another on an unspecified number of occasions and then hanging up when the phone is answered. Courts have found liability in the following circumstances: where the defendant used vile, insulting, and outrageous language during approximately 200 phone calls over a period of four months (*Summit Loans, Inc v. Pecola* (1972), 265 Md. 43, 288 A.2d 114); where the defendant harassed and annoyed the plaintiff by calling her on numerous occasions at her home and while she was a patient in a hospital and the telephone calls concerned a debt which plaintiff did not owe (*Carey v. Statewide Finance Co.* (1966), 3 Conn. Cir. 716, 223 A.2d 405); or where defendant published in a newspaper a statement, "Wanna hear a sexy telephone voice? Call _____ and ask for Louise," which resulted in plaintiff Louise being deluged by hundreds of telephone calls (*Harms v. Miami Daily News, Inc.* (Fla. App. 1961), 127 So.2d 715). The conduct in the above cases is much more severe and annoying to the plaintiff than the conduct alleged in the instant case.

As indicated in one annotation (56 A.L.R.3d 457 (1974)), cases considering the question of invasion of privacy by means of an unreasonable intrusion on the seclusion of another "have run substantially in favor of nonliability overall, and especially where only a single means of intrusion was used * * *." (56 A.L.R.3d 457, 463.) For example, a Federal court construing Georgia law noted that prior Georgia cases held that to state a cause of action the intrusion must be physical and analogous to a trespass in the plaintiff's home or other quarters. (*American Credit Corp. v. United States Casualty Co.* (N.D. Ga. 1969), 49 F.R.D. 314.) A Missouri court reversed a judgment for plaintiff due to the lack of evidence that anyone other than the plaintiff heard what was said to plaintiff over the phone. (*Zimmerman v. Associates Discount Corp.* (1969 Mo.), 444 S.W.2d 396.) The court adopted the view that such a tort must be based on publicity. Similarly, the court in *Tollefson v. Safeway Stores* (1960), 142 Colo. 442, 351 P.2d 274, noting that there was no attempt to vilify or expose the man to public ridicule and no effort to cause him to lose his job, held that no cause of action was stated for less than 100 calls

to the plaintiff's residence. After a review of cases from other jurisdictions, we can find no case factually similar to the instant case in which a court has ruled that a cause of action existed for invasion of privacy.

We next turn to plaintiffs' argument that count II stated a cause of action for intentional infliction of severe emotional distress. In order to state a cause of action for the intentional infliction of severe emotional distress, plaintiffs must allege outrageous conduct calculated to cause severe emotional distress to persons of ordinary sensibilities, in the absence of special knowledge or notice. (*Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157.) In *Public Finance Corp. v.Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765, our supreme court indicated that the "outrageous conduct" upon which an action for intentional infliction of severe emotional distress is based must extend beyond "mere insults, indignities, threats, annoyances, petty oppressions or trivialities." (66 Ill. 2d 85, 89-90, 360 N.E.2d 765, 767.) Quoting from the Restatement (Second) of Torts (1965), the court further indicated:

> " 'It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency * * *.' Restatement (Second) of Torts sec. 46, comment d (1965).
>
>                         * * *
>
> * * * 'The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.' Comment *j*. See also Prosser, Law of Torts sec. 12, at 54 (4th ed. 1971)." 66 Ill. 2d 85, 90, 360 N.E.2d 765, 767.

■■ As we review the allegations of plaintiffs' third amended complaint, we cannot conclude that the conduct therein alleged is of the outrageous character contemplated by our supreme court in *Public Finance Corp. v. Davis*. Beyond question, the actions therein alleged—threats by defendants and their children to force the plaintiffs to move from the neighborhood, calls to plaintiffs' home which resulted in the callers hanging up when the phone was answered, and complaints to the police against Luke Kelly on trivial matters—are actions without any social utility which certainly would have been irritating to the strongest of psyches. However, these actions do not go beyond mere indignities,

threats, or trivialities and do not constitute the outrageous conduct that no reasonable man could be expected to endure. As a result the trial court properly dismissed count II.

For the foregoing reasons, we affirm the order of the trial court dismissing both counts of the third amended complaint.

Order affirmed.

O'CONNOR and CAMPBELL, JJ., concur.